Carmie **WATKINS,** Plaintiff-Appellant,

v.

**L.M. BERRY & COMPANY, et al.,**
**Defendants-Appellees.**

No. 82–7007.

United States Court of Appeals,
Eleventh Circuit.

May 2, 1983.

Slade Watson, Tuscaloosa, Ala., for plaintiff-appellant.

John D. Clements, Thomas, Taliaferro, Forman, Burr & Murray, William F. Murray, Jr., Birmingham, Ala., for defendants-appellees.

Before GODBOLD, Chief Judge, FAY and SMITH *, Circuit Judges.

EDWARD S. SMITH, Circuit Judge:

In this case appellant Watkins sued her employer, L.M. Berry & Company, and others, alleging violation of the federal wiretapping statute, title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520 (1976).[1] The district court granted summary judgment on the merits against Watkins, and she now appeals. We reverse and remand for further proceedings.

### I.

The facts have not been developed in detail, but their general outline is undisputed. Carmie Watkins was employed as a sales representative by L.M. Berry & Company (Berry Co.). Watkins' immediate supervisor was Martha Little, and Little's supervisor was Diane Wright. Berry Co. was under contract with South Central Bell to solicit Yellow Pages advertising from South Central Bell's present and prospective Yellow Pages advertisers. Much of this solicitation was done by telephone and Watkins was hired and trained to make those calls.

Berry Co. has an established policy, of which all employees are informed, of monitoring solicitation calls as part of its regular training program. The monitored calls are reviewed with employees to improve sales techniques. This monitoring is accomplished with a standard extension telephone, located in the supervisor's office, which shares lines with the telephones in the employees' offices. Employees are permitted to make personal calls on company telephones, and they are told that personal calls will not be monitored except to the extent necessary to determine whether a particular call is of a personal or business nature.

In April or May 1980, during her lunch hour, Watkins received a call in her office from a friend. At or near the beginning of the call (there are conflicting indications), the friend asked Watkins about an employment interview Watkins had had with another company (Lipton) the evening before. Watkins responded that the interview had gone well and expressed a strong interest in taking the Lipton job. Unbeknownst to Watkins, Little was monitoring the call from her office and heard the discussion of the interview.

After hearing the conversation (how much is unclear), Little told Wright about it. Later that afternoon Watkins was called into Wright's office and was told that the company did not want her to leave. Watkins responded by asking whether she was being fired. Upon discovering that her supervisors' questions were prompted by Little's interception of her call, Watkins became upset and tempers flared. The upshot was that Wright did fire Watkins the next day. However, Watkins complained to Wright's supervisor and was reinstated with apologies from Wright and Little. Within a week Watkins left Berry Co. to work for Lipton.

### II.

In Watkins' suit, Berry Co., Little, Wright, and South Central Bell are named as defendants. Watkins based her claims on title III and the Communications Act of 1934, 47 U.S.C. § 605 (1976). South Central Bell moved for summary judgment on the ground that it was not legally responsible for Little's actions, which motion the district court granted. The court also dismissed the cause of action based on the

---

* Honorable Edward S. Smith, U.S. Circuit Judge for the Federal Circuit, sitting by designation.

1. Pub.L. No. 90–351, § 802, 82 Stat. 212. All section references in the text will be to the U.S.Code.

Communications Act for failure to state a claim upon which relief could be granted.

█ We agree that South Central Bell is not liable on a theory of *respondeat superior*. While there is no question that South Central Bell had considerable influence on the solicitation message, Watkins alleges nothing that would support the conclusion that South Central Bell had the kind of close control over Berry Co.'s internal operating procedures and employment practices that would support vicarious liability. We therefore affirm the granting of South Central Bell's motion for summary judgment.

█ The district court also held that the Communications Act does not provide the basis for a civil remedy. Watkins makes no real effort to contest this holding on appeal. To the extent that section 605 applies to this case, any private remedy it contains is superseded by the remedy provided by section 2520 of title III. Section 605 was extensively revised by title III itself,[2] and there is no reason to believe that title III provided duplicative remedies. We therefore also affirm the dismissal of the Communications Act claims.

### III.

Title III forbids the interception, without judicial authorization, of the contents of telephone calls. It provides:

Except as otherwise specifically provided in this chapter any person who—

\* \* \* \* \* \*

(b) willfully uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication \* \* \*

\* \* \* \* \* \*

shall be fined not more than $10,000 or imprisoned not more than five years, or both.

18 U.S.C. § 2511(1)(b). Title III also provides a civil remedy and statutory damages:

Any person whose wire or oral communication is intercepted, disclosed, or used in violation of this chapter shall (1) have a civil cause of action against any person who intercepts, discloses, or uses, or procures any other person to intercept, disclose, or use such communications, and (2) be entitled to recover from any such person—

(a) actual damages but not less than liquidated damages computed at the rate of $100 a day for each day of violation or $1,000, whichever is higher;

(b) punitive damages; and

(c) a reasonable attorney's fee and other litigation costs reasonably incurred.

18 U.S.C. § 2520. Watkins' complaint is founded upon these sections.

It is not disputed that Little's conduct violates section 2511(1)(b) unless it comes within an exemption "specifically provided in" title III (18 U.S.C. § 2511(1)). Appellees claim the applicability of two such exemptions. The first is the consent exemption set out in section 2511(2)(d):

It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire or oral communication \* \* \* where one of the parties to the communication has given prior consent to such interception \* \* \*.

Appellees argue that, by using Berry Co.'s telephones and knowing that monitoring was possible, Watkins consented to the monitoring. The second is the business extension exemption in section 2510(5)(a)(i):

"electronic, mechanical, or other device" [in § 2511(1)(b) ] means any device or apparatus which can be used to intercept a wire or oral communication other than—

(a) any telephone or telegraph instrument, equipment or facility, or any component thereof, (i) furnished to the subscriber or user by a communications common carrier in the ordinary course of its business and being used by the subscriber or user *in the ordinary course of its business;* \* \* \* [emphasis supplied].

2. Pub.L. No. 90–351, § 803, 82 Stat. 223.

"[E]quipment * * * furnished to the subscriber or user by a communications common carrier in the ordinary course of its business" means in this case simply a standard extension telephone. *See Briggs v. American Air Filter Co.,* 630 F.2d 414, 417 n. 5 (5th Cir.1980). The issue is therefore whether the monitoring of this call was in the ordinary course of Berry Co.'s business. *Briggs,* 630 F.2d at 417. Appellees contend that it was and hence that the extension telephone was not a "device" within the statutory meaning (section 2511(1)(b)) of "interception."

*Briggs v. American Air Filter Co.,* decided by the Fifth Circuit in 1980, provides the framework for interpreting these exemptions. The consent and business extension exemptions are analytically separate. Consent may be obtained for any interceptions, and the business or personal nature of the call is entirely irrelevant. Conversely, the business extension exemption operates without regard to consent. So long as the requisite business connection is demonstrated, the business extension exemption represents the "circumstances under which nonconsensual interception" is not violative of section 2511(1)(b). *Briggs,* 630 F.2d at 419. Accordingly, in analyzing the present case we will first consider the scope of Watkins' consent to the monitoring of this call and then move to the question whether the interception was justified as being in the ordinary course of Berry Co.'s business, notwithstanding the absence of consent.

### A.

Appellees argue that Watkins' acceptance of employment with Berry Co. with knowledge of the monitoring policy constituted her consent to the interception of this call. This is erroneous with respect to both Watkins' actual and implied consent.

It is clear, to start with, that Watkins did not actually consent to interception of *this*

particular call. Furthermore, she did not consent to a *policy* of general monitoring. She consented to a policy of monitoring sales calls but not personal calls. This consent included the inadvertent interception of a personal call, but only for as long as necessary to determine the nature of the call. So, if Little's interception went beyond the point necessary to determine the nature of the call, it went beyond the scope of Watkins' actual consent.

■ Consent under title III is not to be cavalierly implied. Title III expresses a strong purpose to protect individual privacy by strictly limiting the occasions on which interception may lawfully take place. *See United States v. Harpel,* 493 F.2d 346, 351 (10th Cir.1974). Stiff penalties are provided for its violation. It would thwart this policy if consent could routinely be implied from circumstances. *Jandak v. Village of Brookfield,* 520 F.Supp. 815, 820 (N.D.Ill. 1981). Thus, knowledge of the *capability* of monitoring alone cannot be considered implied consent. *See Campiti v. Walonis,* 611 F.2d 387, 394 (1st Cir.1979); *Crooker v. United States Department of Justice,* 497 F.Supp. 500, 503 (D.Conn.1980) (prisoners' knowledge that calls were routinely monitored did not constitute consent to it).

The cases that have implied consent from circumstances have involved far more compelling facts than those presented here. In *Jandak,* the police officer whose call was intercepted knew or should have known [3] that the line he was using was *constantly* taped for police purposes; furthermore, an unmonitored line was provided expressly for personal use. 520 F.Supp. at 824–25. In *Simmons v. Southwestern Bell Telephone Co.,* 452 F.Supp. 392, 393–94 (W.D. Okl.1978), *aff'd,* 611 F.2d 342 (10th Cir. 1979), the plaintiff made a personal call on telephones which were to be used exclusively for business calls and which he knew

---

**3.** The police station was supplied with 10 lines: 8 were tape recorded continuously with an audible warning sound; 1 was continuously taped without a sound, for investigatory purposes; and 1 was not monitored. All officers were informed of this system and as duty officers

had had some familiarity with its use. The *Jandak* court found that under these limited circumstances the officer's specific expectations could not be given controlling weight. 520 F.Supp. at 817–18, 824–25.

were regularly monitored. He had been warned on previous occasions to stop making personal calls from his business telephone; other telephones were specifically provided for personal use. As in *Jandak,* the *Simmons* court held that the employee was fully aware of the extent of the monitoring and deliberately ignored the strong probability (certainty in *Jandak*) of monitoring. 452 F.Supp. at 396. The *Jandak* and *Simmons* situations are worlds apart from Watkins' case. Watkins consented to a scheme of limited monitoring, on which she relied.

■ We can think of no reason why consent under title III cannot be limited. We therefore hold that consent within the meaning of section 2511(2)(d) is not necessarily an all or nothing proposition; it can be limited. It is the task of the trier of fact to determine the scope of the consent and to decide whether and to what extent the interception exceeded that consent.

### B.

■ If, as appears from the undisputed facts, there was no consent to interception of the call beyond what was initially required to determine its nature, appellees must rely on the business extension exemption to shield them from liability for any listening beyond that point. To prevail, they must show that the interception of the call beyond the initial period was in the ordinary course of business. *Briggs,* 630 F.2d at 417. It is not enough for Berry Co. to claim that its general policy is justifiable as part of the ordinary course of business. We have no doubt that it is. *See Jandak,* 520 F.Supp. at 822; *Simmons,* 452 F.Supp. at 396. The question before us, rather, is whether the interception of *this* call was in the ordinary course of business. *See Briggs,* 630 F.2d at 417, 419–20; *Campiti,* 611 F.2d at 392; *Harpel,* 493 F.2d at 351–52.

Under *Briggs,* the general rule seems to be that if the intercepted call was a business call, then Berry Co.'s monitoring of it

was in the ordinary course of business. If it was a personal call, the monitoring was probably, but not certainly, *not* in the ordinary course of business. The undisputed evidence strongly suggests that the intercepted call here was not a business call. Watkins received the call and so could not have been soliciting advertising; the caller was a personal friend; and the topics discussed were mainly social. To that extent this was certainly a personal call.

Appellees argue, however, that the signal topic was Watkins' interview with another employer. This was obviously of interest and concern to Berry Co., so, appellees argue, it was in the ordinary course of business to listen. Appellees point to *Briggs* wherein the conversation was between personal friends. *Briggs* held that because the employee was suspected of passing confidential information to the friend (a former employee of American Air Filter), the monitoring was in the ordinary course of business.

Reliance on *Briggs* for the proposition that a personal call can be in the ordinary course of business is misplaced. In *Briggs,* the parties stipulated that the call was a business call and that American Air Filter's business was the only topic discussed. The court relied heavily on these facts, 630 F.2d at 420, and the significance of its result is sharply limited thereby. 630 F.2d at 420 n. 8.

■ The phrase "in the ordinary course of business" cannot be expanded to mean anything that interests a company. Such a broad reading "flouts the words of the statute and establishes an exemption that is without basis in the legislative history" of title III. *Campiti,* 611 F.2d at 392.[4] Berry Co. might have been curious about Watkins' plans, but it had no legal interest in them. Watkins was at liberty to resign at will and so at liberty to interview with other companies. Her interview was thus a personal matter, neither in pursuit nor to the legal detriment of Berry Co.'s business. To expand the business extension exemption as

---

4. This passage in *Campiti* criticizes any expan- sive reading of *Briggs.*

broadly as appellees suggest would permit monitoring of obviously personal and very private calls on the ground, for example, that the company was interested in whether Watkins' friends were "nice" or not. We therefore conclude that the subject call was personal.

While a business call is dispositive in one direction, it is not clear, in this circuit, whether a personal call is likewise dispositive. In *Harpel,* the Tenth Circuit stated:

> We hold as a matter of law that a telephone extension used without authorization or consent to surreptitiously record a private telephone conversation is not used in the ordinary course of business. This conclusion comports with the basic purpose of the statute, the protection of privacy * * *.

493 F.2d at 351.[5] *Accord, Gerrard v. Blackman,* 401 F.Supp. 1189, 1191–93 (N.D.Ill. 1975) (illegal for doctor to monitor personal calls of an inmate in a psychiatric ward). *Briggs,* however, expressly declined to reach the question because the call in that case was stipulated to be a business call. In a footnote, the court said:

> In general, it is hard to see how use of an extension telephone to intercept a call involving non-business matters could be "in the ordinary course of business," since such activity is unlikely to further any legitimate business interest. However, interception of calls reasonably suspected to involve non-business matters might be justifiable by an employer who had had difficulty controlling personal use of business equipment through warnings.

630 F.2d at 420 n. 8. This suggests that, if interception of personal calls is permitted at all, it is permitted only for a very limited purpose. The interception in *Simmons,* for

example—where personal calls were not allowed on business telephones (452 F.Supp. 392)—fits perfectly within this rule.

 Watkins' case, however, squarely presents the issue not reached in *Briggs:* whether the contents of a personal call can ever be monitored in the ordinary course of business. If any personal calls can be monitored, this is probably the one, because Watkins discussed matters of great interest to the business. But we have seen that such a rule would be unacceptable. Concurring specially in *Briggs,* Judge Clark said:

> Where I differ from the majority is in not making the suggestion in Footnote 8 a part of our holding. In the footnote it is suggested that the interception of a non-business call is probably not "in the ordinary [course] of business." I would make that a positive, affirmative statement because I think the distinction is reasonably clear as to what can and cannot be intercepted: a business call can be, a private call cannot be. *Harpel* [citation omitted] held that a private call could not be intercepted and I agree with that holding.

630 F.2d at 421. This case presents the appropriate occasion to make that positive, affirmative statement. We hold that a personal call may not be intercepted in the ordinary course of business under the exemption in section 2510(5)(a)(i), except to the extent necessary to guard against unauthorized use of the telephone or to determine whether a call is personal or not. In other words, a personal call may be intercepted in the ordinary course of business to determine its nature but never its contents.[6] The limit of the exemption for Berry Co.'s business was the policy that Berry Co. in

---

**5.** Interception was permitted in *James v. Newspaper Agency Corp.,* 591 F.2d 579 (10th Cir. 1979). The *James* opinion, however, does not discuss the nature of the call. As it made no effort to distinguish *Harpel,* also a Tenth Circuit case, we may assume that *James* involved a business call.

**6.** This distinction would not obtain so strongly in the exemption in § 2510(5)(a)(ii) for law enforcement officers. In the case of prisoners'

calls, the courts have held that random, routine monitoring of personal calls (but not to attorneys) is permissible for security reasons. *United States v. Paul,* 614 F.2d 115, 117 (6th Cir.), *cert. denied,* 446 U.S. 941, 100 S.Ct. 2165, 64 L.Ed.2d 796 (1980); *Campiti,* 611 F.2d at 392; *Crooker,* 497 F.Supp. at 503. The uniqueness of the prison situation indicates the very different result that should follow in a case like Watkins'.

**584**

fact instituted.[7] It thus appears that Little was justified in listening to that portion of the call which indicated that it was not a business call;[8] beyond that, she was not. Determination of the relevant points in the call is for the trier of fact.

### C.

■ A final issue remains with respect to both exemptions. *If* it turns out that Little was justified in listening to the beginning of the conversation, either to determine its nature or with consent, and *if* it turns out that during that portion of the conversation the interview was discussed, then we must decide whether Little was obliged to hang up or, having entered the conversation legally, could remain on the line indefinitely. We think that the conclusion is inescapable that these exemptions do not automatically justify interception of an entire call. The expectation of privacy in a conversation is not lost entirely because the privacy of part of it is violated. Under title III a law enforcement officer executing a wiretap order must minimize his intrusion to the extent possible. 18 U.S.C. § 2518(5). Therefore, Little was obliged to cease listening as soon as she had determined that the call was personal, regardless of the contents of the legitimately heard conversation.

■ The violation of section 2511(1)(b) is the intercepting itself, not the interception of particular material. It is not necessary to recovery of damages that the violator hear anything in particular; she need do no more than listen. Thus, the reinstatement of Watkins and her subsequent departure, while they may affect the amount of actual damages, do not moot or render *de minimis* her claim. Watkins' right to recover at least the minimum statutory damages flows from the interception, not from the actual damage caused. It is for the trier of fact to determine at what point the telephone should have been hung up.

In the context of the inadvertent overhearing by a switchboard operator in connecting calls,[9] the courts have given the trier of fact wide latitude in determining at what point the telephone should have been hung up. In *United States v. Savage*, 564 F.2d 728, 732 (5th Cir.1977), the court permitted the overhearing of 10–15 seconds of a call because the operator was elderly (and so slow to hang up anyway), the woman on the telephone was distraught and might have needed help, and the interception was very brief. In *State of Arizona ex rel. Flournoy v. Wren*, 108 Ariz. 356, 498 P.2d 444, 448 (Ariz.1972), brief additional overhearing was held inadvertent because the operator was not physically able to hang up the telephone immediately. Obviously, neither of these cases stands for the proposition that indefinite listening is permissible. They represent sensible applications of the appropriate legal standard to specific facts.

We are less enthusiastic about the result in *United States v. Axselle*, 604 F.2d 1330, 1335 (10th Cir.1979). There the operator listened for 3–5 minutes after making the connection (relatively, a very long time)[10] because the conversation "sounded interesting." The Tenth Circuit expressed concern over the length of and reasons for the interception, but held that "after hearing that opening remark, the listening which continued *could be found* not willful, as the trial

---

**7.** The scopes of the consent and business extension exemptions do not necessarily coincide. It is only because Berry Co.'s monitoring policy, to the extent that Watkins consented to it, was the same as its legitimate business interest in nonconsensual interception that they coincide in this case.

**8.** Watkins alleges that Little knew that the call was incoming and if so could not be business. If that is true—and we express no opinion whatsoever on it—the entire listening would have been unlawful.

**9.** Inadvertent interception does not violate § 2511(1)(b).

**10.** It has been widely advertised that one may reach out by telephone and touch all sorts of people in 3 minutes or less; it seems to us that it should not take that long to determine whether a call is of a personal or a business nature.

court did [citing *Flournoy*]." 604 F.2d at 1335 (emphasis supplied). We find this result troubling. It absolutely contradicts the meaning of the operative language—"inadvertent"—nor is it supported by a finding that indefinite listening is permitted. We do not commend *Axselle* to the district court as an example of fact-finding for Watkins' case.

### IV.

We hold that this case was not properly disposed of by summary judgment, as genuinely disputed issues of material fact remain. A detailed factual inquiry into the interception is necessary if the standards set forth above are to be adequately addressed. Among the factual questions that should be considered are: What was the monitoring policy to which Watkins consented? Did Little know that Watkins had received the call and if so did that necessarily indicate a personal call? How long was the call? When was the interview discussed? Were other subjects discussed? For how long did Little listen? How long does it take to discover that a call is personal, for example, is there an immediately recognizable pattern to a sales call? This list of questions is not exhaustive, but it is hoped that it points out the directions in which further inquiries should be pursued.

The judgment of the district court is affirmed with respect to the dismissal of the claims based on 47 U.S.C. § 605 and the grant of summary judgment to South Central Bell. With respect to the claims based on title III against Berry Co., Little, and Wright, the judgment of the district court is REVERSED and REMANDED.