**Gerald GRIGGS–RYAN, Plaintiff,**

v.

**Richard CONNELLY and The Town of Wells, Defendants.**

**Civ. No. 89–0174 P.**

United States District Court,
D. Maine.

Dec. 13, 1989.

**684**

Thomas Van Houton, Sanford, Me., for plaintiff.

John M.R. Paterson, Bernstein, Shur, Sawyer & Nelson, Portland, Me., for defendants.

## MEMORANDUM OF DECISION DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

GENE CARTER, Chief Judge.

Plaintiff filed suit alleging a violation of 18 U.S.C. § 2511,[1] *et seq.* (wire interception and disclosure provisions of Title III of the Omnibus Crime Control and Safe Streets Act) and seeking damages pursuant to 18 U.S.C. § 2520. This matter is now before the Court on Plaintiff's Motion for Summary Judgment, filed on October 23, 1989, supported by his own affidavit and a Statement of Material Facts Not in Dispute. Defendants filed an objection and a counter-motion for summary judgment, supported by an affidavit and a Statement of Material Facts. Defendants argue, *inter alia*, that Plaintiff impliedly consented to the original interception of Plaintiff's telephone call, and, therefore, Defendant Connally's conduct of disclosing or using that information cannot violate 18 U.S.C. §§ 2511(1)(c) & (d).[2] The Court, relying on the undisputed facts presented by the parties, finds that Plaintiff's actions fall within the consent exception, 18 U.S.C. § 2511(2)(c), to liability under the interception and disclosure provisions of Title III of the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. §§ 2511(1)(c) & (d). Therefore, Plaintiff's motion for summary judgment will be denied and Defendants' counter-motion will be granted.

This action rests, in part, on the initial interception of Plaintiff's telephone call by Beaulah Smith and her subsequent disclosure of the contents of that telephone call to Defendant Connally. The Court will set out these facts, which underly the conduct of the parties to this suit, as well as the facts which directly concern the parties' conduct.[3] None of the facts of this case are in dispute.

Beaulah Smith (Smith) runs a summer campground business from her home; the business includes the renting of guest rooms in her home. During the course of the summer of 1987, Smith received obscene, harassing, and threatening telephone calls. Smith believed that some of

---

**1.** Plaintiff seems to rely on the following language of 18 U.S.C. § 2511:

(1) Except as otherwise specifically provided in this chapter any person who

(c) intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral or electronic communication in violation of this subsection; or ...

(d) intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral or electronic communication in violation of this subsection ...

shall be subject to suit....

18 U.S.C. §§ 2511(1)(c) & (d). Thus, the Court will hereafter refer to these provisions.

**2.** Defendants' argument relies on 18 U.S.C. § 2511(2)(c), which reads as follows:

(c) It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire, oral, or electronic communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception.

18 U.S.C. § 2511(2)(c).

**3.** Plaintiff incorporates into his affidavit the transcript from a suppression hearing in the Maine Superior Court, York County, in *State of Maine v. Gerald Griggs-Ryan*, No. CR–89–10. The transcript of that hearing contains statements by Beaulah Smith which Plaintiff did not dispute in either his Affidavit or his Statement of Facts Not in Dispute. These statements provide some of the underlying facts of the case.

the calls came from whom she understood was Plaintiff's friend, Paul Jackson. Smith began recording incoming calls on her telephone answering machine after making various complaints to the Wells Police Department, and upon that department's advice. It was Smith's normal practice to stop the answering machine from recording upon ascertaining that the current incoming telephone call was not obscene or threatening.

Smith informed Plaintiff on more than one occasion that she was recording *all* incoming calls in an attempt to catch the person or persons who were making the obscene and threatening calls she had received. Smith also told Plaintiff to warn his friends. There is no evidence that Smith qualified her statements to Plaintiff, she simply told Plaintiff that she would record all incoming calls.

On September 14, 1987, Plaintiff was residing in one of the guest rooms in Smith's home, although Smith's business was not officially open, to perform some carpentry work agreed upon by Plaintiff and Smith. On the evening of September 14, 1987, Smith answered a telephone call on the telephone located in her bedroom. The caller identified himself as Richard Kierstad and requested to speak to Plaintiff. Smith had her daughter page Plaintiff, and Plaintiff picked up an extension telephone located in the office portion of the house. As Smith began to hang up the phone, she heard the caller state, "hi, its Paul, she thinks its Keirstad." Because Smith suspected that "Paul" was Paul Jackson, the person who she speculated made some of the obscene and threatening calls, Smith continued to listen to the conversation and did not turn off the answering machine, thereby recording the entire conversation.

Smith called the police, believing she had overheard information concerning an illegal marijuana transaction. Defendant Connally, a detective for the Wells Police Department, and patrolman Paul Verrel responded to Smith's call. Connally thoroughly interviewed Smith, who disclosed to him the contents of what she heard on the telephone as well as all the events leading up to her recording of the telephone call. Connally made a copy of Smith's tape recording; disclosed the information to District Attorney Mary Tousignant; upon her advice, wrote out an affidavit in support of a search warrant; and presented the affidavit to Complaint Justice Jeff Clark. As a result thereof, a search warrant was obtained which recited the contents of the intercepted conversation as a basis for the issuance of the search warrant, and a criminal prosecution of Plaintiff resulted. The search warrant was executed against Plaintiff and certain of his personal property was seized.

Plaintiff alleges that Connally's conduct, in his official capacity as a Wells police officer, in disclosing the contents of Plaintiff's telephone conversation, obtained in violation of 18 U.S.C. § 2511, *et seq.*, to both the district attorney and a Complaint Justice violates 18 U.S.C. § 2511, *et seq.* Plaintiff alleges that he sustained damage as a result of Defendant's actions consisting of his arrest at gunpoint in the middle of the night; his public identification as a major drug dealer in print media; confiscation of "all his worldly possessions;" eighteen days of incarceration at the York County Jail; loss of business contacts; and criminal prosecution in the Maine State Courts and the expense of defending in such proceedings. In Count I of the Complaint, Plaintiff seeks an award of damages in the amount of $100,000 plus interest, costs, attorney's fees, and litigation expenses for the disclosure and/or use of the contents of his telephone call. In Count II of the Complaint, Plaintiff seeks $250,000 in punitive damages because he alleges that Defendant Connally acted in a wanton, reckless or malicious manner.

Plaintiff's Motion for Summary Judgment states that there is no issue of material fact concerning whether Smith both intercepted the telephone call and disclosed its contents in violation of 18 U.S.C. § 2511, *et seq.*, or whether Connally subsequently disclosed the improperly obtained information. Therefore, Plaintiff argues that he is entitled to summary judgment.

Defendants counter-motion for summary judgment relies, *inter alia,* on the express warnings given by Smith under an implied consent theory. In response to Defendant's counter-motion, Plaintiff states that he never expressly consented to have any calls, or this call in particular, recorded, although he does not deny that he was told that all calls would be recorded. Plaintiff argues that he never consented, as the term is utilized in section 2511(2)(d), to the recording of the call on September 14, 1987. Thus, the issue is whether Plaintiff's knowledge that all calls would be recorded may be considered consent under section 2511(2)(d).

## DISCUSSION

A motion for summary judgment must be granted if:

> [T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). The Court of Appeals for the First Circuit has just recently articulated the legal standard to be applied in deciding motions for summary judgment:

> [T]he movant must adumbrate 'an absence of evidence to support the nonmoving party's case.' *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 [106 S.Ct. 2548, 2554, 91 L.Ed.2d 265] (1986). When that is accomplished, the burden shifts to the opponent to establish the existence of a fact issue which is both 'material,' in that it might affect the outcome of the litigation, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 [106 S.Ct. 2505, 2510, 91 L.Ed.2d 202] (1986); *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975), *cert. denied,* 425 U.S. 904 [96 S.Ct. 1495, 47 L.Ed.2d 754] (1976), and 'genuine,' in that a reasonable jury could, on the basis of the proffered proof, return a verdict for the opponent. *Anderson,* 477 U.S. at 248 [106 S.Ct. at 2510]; *Oliver v. Digital Equipment Corp.,* 846 F.2d 103, 105 (1st Cir.1988). It is settled that the nonmov-

ant may not rest upon mere allegations, but must adduce specific, provable facts demonstrating that there is a triable issue. 'The evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limits differing versions of the truth which a factfinder must resolve at an ensuing trial.' *Mack v. Great Atlantic and Pacific Tea Co.,* 871 F.2d 179, 181 (1st Cir.1989). As the Supreme court has said:

> [T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson,* 477 U.S. at 249–59 [106 S.Ct. at 2510–15].

*Brennan v. Hendrigan,* 888 F.2d 189, 191 (1st Cir.1989).

The consent exception to liability for wire interception reads as follows:

> (d) It shall not be unlawful under this chapter for a person not acting under the color of law to intercept a wire, oral or electronic communication or where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

18 U.S.C. § 2511(2)(d).

The term "consent" in this provision includes both express and implied consent. 1968 U.S.Code Cong. & Admin.News 2112, 2182. The Senate Report even provided an example of implied consent, stating that "surveillance devices in banks or apartment houses for institutional or personal protection would be impliedly consented to." *Id.* Implied consent is determined from viewing the circumstances surrounding the interception to determine if the "injured" party knowingly agreed to the surveillance. *United States v. Amen,* 831 F.2d 373, 378 (2d Cir.1987).

Plaintiff seems to argue that implied consent cannot apply because the Court of Appeals for the First Circuit's decision in *Campiti v. Walonis*, 611 F.2d 387 (1st Cir. 1979) stands for the proposition that there is no implied consent exclusion to the wire tap statute. Plaintiff notes that the *Campiti* court "refused to recognize implied consent derived from surrounding circumstances, stating that such a holding would 'completely distort the plain words' of the law." Plaintiff's reply to Defendants' objection and counter-motion for summary judgment at 1. The Court finds that the facts presented in this case distinguish it from the holding in *Campiti v. Walonis*, 611 F.2d 387 (1st Cir.1979).

In *Campiti*, the prisoner whose telephone call was monitored was not informed that the call would be monitored. *Campiti*, 611 F.2d at 390. Indeed, numerous courts have refused to apply the doctrine of implied consent in similar circumstances. *See Watkins v. L.M. Berry & Co.*, 704 F.2d 577, 581 (11th Cir.1983); *Jandak v. Village of Brookfield*, 520 F.Supp. 815, 820, 820 n. 5 (N.D.Ill.1981). In contrast, where the "injured" party was aware that calls were monitored, the doctrine of implied consent should apply. *United States v. Amen*, 831 F.2d 373, 378–79 (2d Cir.1987); *United States v. Montgomery*, 675 F.Supp. 164, 166–67 (S.D.N.Y.1987), *aff'd*, 860 F.2d 15 (2d Cir.1988); *Simmons v. Southwestern Bell Telephone Co.*, 452 F.Supp. 392, 396 (W.D.Okla.1978), *aff'd*, 611 F.2d 342 (10th Cir.1979). This distinction was described in *Jandak*, where the court noted that consent might be applied in fact (did the party *actually* know of the telephone tap), but should not be applied in law (should the party reasonably have known about the telephone tap). *Jandak v. Village of Brookfield*, 520 F.Supp. 815, 820 n. 5 (N.D. Ill.1981).

In this suit, Plaintiff was told that *all* calls would be taped. Thus, Plaintiff knew before speaking on the telephone that Smith taped the incoming calls. While it may have been Smith's practice to stop taping calls once she was assured they were not obscene or threatening, neither Smith nor Plaintiff state that this information was conveyed to Plaintiff. Furthermore, the circumstances under which the interception took place evidence implied consent.

Much like the example of implied consent provided by the Senate Report, Smith utilized this recording device for her own personal protection in her home/rooming house. Smith began recording calls only when the need to protect herself arose. In addition, Plaintiff's receiving of a telephone call inside of Smith's home, when considered in light of the warning he received, manifests implied consent. Unlike the situation in a prison, Plaintiff had the opportunity to use other telephones to discuss personal business. It would not have been difficult for Plaintiff to have asked for the telephone number of the incoming caller and to have called him back. There is no evidence that *outgoing* calls were recorded.

Thus, the underlying information was not obtained in violation of section 2511, *et seq.*, because Smith's actions were excepted by the consent provision of the statute, 18 U.S.C. § 2511(2)(c). Because Smith's actions were not in violation of section 2511, Defendant Connally could not have disclosed or used information obtained "through the interception of a wire, oral, or electronic communication in violation of [the] statute." 18 U.S.C. § 2511(1)(c) & (d).

Accordingly, Plaintiff's Motion for Summary Judgment is hereby DENIED; Defendant's Motion for Summary Judgment is hereby GRANTED; and it is hereby ORDERED that Plaintiff's complaint be, and it is hereby, DISMISSED.