**Earlene Christine BURNETT, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–89–00501–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

April 26, 1990.

Rehearing Denied May 31, 1990.

Kent Schaffer, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Alan Curry, Lydia Johnson, Asst. Dist. Attys., Houston, for appellee.

Before COHEN, DUNN and WARREN, JJ.

## OPINION

WARREN, Justice.

A jury found appellant guilty of theft, and the court assessed punishment at 30 days confinement.

On October 6, 1988, Rebecca Head, working for "loss prevention" for Marshall's department store in the security department, was requested to set up surveillance, a closed circuit television camera, to watch appellant, one of the store's employees. Appellant was a fitting room clerk, whose responsibility was to count the items of merchandise as they were taken into the

various fitting rooms by the store's customers.

Appellant arrived at work early on October 6, 1988, selected a skirt with a matching top and a blouse, and took them into the fitting room. Appellant eventually carried a total of four blouses and two skirts into the fitting room, prior to the beginning of her shift. One of the store's other employees, Ms. McGriff, was instructed to enter the fitting room, and find out the description and price of the clothes that were carried in by appellant.

During the course of the investigation, Ms. Head picked up an extension phone and listened to a telephone conversation between appellant and another woman. It was against the store's policy for an employee to use the phones to make personal calls. Appellant placed the call, addressed the other woman as "honey," and asked if she had anything for lunch. The other woman said that she had some bologna and a hot dog. Appellant said, "A balogna [sic] sandwich and a hot dog—that is not much." The other woman said, "I will hold it until you get off work." Appellant replied, "Go ahead and bring me lunch and come get the clothes."

A co-defendant, Hetro Virginia Brye, walked into the store later, carrying a small white bag and a flattened-out black purse. Ms. Brye walked up to appellant and handed appellant the little white bag, which turned out to contain a lunch. Ms. Brye then entered the fitting room, and appellant gave her the clothes which appellant had previously hung in the fitting room. It was a violation of the store's policy for an employee to bring clothes to a customer in the fitting room.

Ms. McGriff testified that she had observed appellant and Ms. Brye do this in the past, and had reported it to the store manager. Ms. McGriff, who was in another fitting room trying on clothes on the day of the surveillance, noticed that Ms. Brye did not try on any of the clothes. When Ms. Brye left the fitting room, her purse was noticeably larger.

Ms. Head used her walkie-talkie to call another security person outside the store, in order to bring Ms. Brye back into the store. Ms. Head then went outside the store, confronted Ms. Brye, and asked if she would come back into the store with her. She took Ms. Brye to the store's security office and asked Ms. Brye to give the merchandise back. Ms. Brye opened her purse and gave Ms. Head all of the merchandise in her purse. The merchandise turned over to Ms. Head was the same merchandise that appellant had previously taken into the fitting room.

Appellant brings two points of error. The second point of error, which we will consider first, complains that the trial court erred in overruling her objection to the introduction of the contents of her telephone conversation, because it was unlawfully intercepted in violation of 18 U.S.C § 2511 (1988).

■ In summary, § 2511 makes it unlawful for any "person" to willfully intercept, use, or disclose any "wire, oral, or electronic communication." Many of the terms used in § 2511 are defined in 18 U.S.C. § 2510 (1988).

A "person" means any employee, or agent of the United States or any State or political subdivision thereof, *and any individual,* partnership, association, joint stock company, trust, or corporation. 18 U.S.C. § 2510(6) (1988). A "wire communication" means "any aural transfer made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception ... furnished or operated by any person engaged in providing or operating such facilities for the transmission of interstate or foreign communications...." 18 U.S.C. § 2510(1) (1988). A telephone conversation has been held to be a wire communication. *See United States v. Axselle,* 604 F.2d 1330, 1334 (10th Cir.1979); *United States v. Harpel,* 493 F.2d 346, 349 (10th Cir.1974).

"Intercept" means the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other

device. 18 U.S.C. § 2510(4) (1988). An "electronic, mechanical, or other device" means any device or apparatus which can be used to intercept a wire, oral, or electronic communication other than:

> (a) any telephone or telegraph instrument, equipment or facility, or any component thereof, (i) furnished to the subscriber or user by a provider of wire or electronic communication service in the ordinary course of its business and *being used by the subscriber or user in the ordinary course of its business ...*; or (ii) being used by a provider of wire or electronic communication service in the ordinary course of its business, or by an investigative or law enforcement officer in the ordinary course of his duties;
>
> (b) a hearing aid or similar device being used to correct subnormal hearing to not better than normal.

18 U.S.C. § 2510(5) (1988) (emphasis added).

■ If appellant's telephone conversation is determined to be an unlawfully intercepted wire or oral communication under § 2511, its use is prohibited in any court proceedings by 18 U.S.C. § 2515 (1988) and Tex.Code Crim.P.Ann. art. 38.23(a) (Vernon Supp.1990).

Appellant correctly points out that the interception of her telephone conversation was unlawful, unless it can be shown that it was consented to, or that it falls within the exception designated in 18 U.S.C. § 2510(5)(a)(i), that is, it was intercepted in the ordinary course of business by Ms. Head. Neither party to the conversation had consented to the interception; therefore, for the call to have been lawfully intercepted, it must fall under the statutory exception.

The question is whether the telephone used by Ms. Head to listen to appellant's conversation was "being used by the subscriber or user in the ordinary course of its business." If so, the telephone conversation was not a "device," the act of listening did not satisfy the statutory definition of an interception, and the point of error must be overruled. If not, the telephone was a "device" used to intercept a wire communi-

cation, and the act of listening was prohibited by § 2511. In that case, the use of the contents of the telephone conversation would be in violation of 18 U.S.C. § 2515 and Tex.Code Crim.P.Ann. art 38.23(a).

The State contends that Ms. Head was acting in the ordinary course of Marshalls' business by listening-in on appellant's telephone conversation in order to guard against appellant's unauthorized use of the telephone to facilitate the commission of the offense of theft.

In *Briggs v. American Air Filter Co.,* 630 F.2d 414, 420 (5th Cir.1980), the court held that when an employee's supervisor has particular suspicions about confidential information being disclosed to a business competitor, has warned the employee not to disclose such information, has reason to believe that the employee is continuing to disclose the information, and knows that a particular phone call is with an agent of the competitor, it is within the ordinary course of business to listen in on an extension phone for at least so long as the call involves the type of information he fears is being disclosed. Appellant argues that *Briggs* is distinguishable from the facts of this case and that this Court should reach a contrary result.

Appellant also contends that, in interpreting the § 2510(5)(a) "extension telephone exception," the *Briggs* court set forth a three-step analysis to be used in all cases for courts to determine whether the act of listening-in was in the ordinary course of business. According to appellant, the three-step analysis includes determining: (1) whether the call was business or personal in nature; (2) whether the act of listening-in was limited in purpose and time; and (3) whether the act of listening in was not part of a general practice of surreptitious monitoring. *Briggs,* 630 F.2d at 420. We do not agree that *Briggs* set forth a three-step analysis to be used in every case dealing with § 2510(5)(a).

First, we note that *Briggs* concerned an employee, using the employer's telephone to discuss confidential, work-related matters with a competitor. The court stated that it need not, and did not, reach the

question of whether interception of a personal call on a business extension telephone is authorized. *Briggs*, 630 F.2d at 420. The court went on to state, in footnote number eight:

> In general, it is hard to see how use of an extension telephone to intercept a call involving non-business matters could be "in the ordinary course of business," since such activity is unlikely to further any legitimate business interest. However, interception of calls reasonably suspected to involve non-business matters might be justifiable by an employer who had had difficulty controlling personal use of business equipment through warnings.

*Briggs*, 630 F.2d at 420 n. 8.

Another probable permissible use of an extension telephone to intercept a personal call would be where the private call concerns the business of the user, as here, where the telephone is being used by an employee to facilitate theft of the employer's goods. In such a case, it seems reasonable that it is in the ordinary course of business for an employer to take measures to avoid the theft of its merchandise.

As to the second step of the analysis used in *Briggs*, even if this step were to be applied in this case, we do not feel that Ms. Head listened to the conversation longer than she needed to. There was testimony that appellant and another woman had been suspected of theft of the store's merchandise in the past. Ms. Head had specific suspicions about appellant, and listened only long enough to confirm that appellant was making the call to arrange a pick-up for the merchandise. As to the third step of the analysis, the record contains no testimony as to whether or not the act of listening was part of a general practice of surreptitious monitoring.

We do not feel that the court in *Briggs* was laying down a hard and fast analytical rule to be followed by all courts in deciding all cases involving § 2510(5)(a). The *Briggs* court was merely summarizing the facts of that case which lead the court to determine that the act of listening-in fell within the exception of § 2510(5)(a). We find that the facts of this case are at least as compelling as those outlined in *Briggs*, and conclude that Ms. Head's use of the extension telephone to listen in on appellant's conversation also falls within the § 2510(5)(a) exception. Appellant's second point of error is overruled.

■ The first point of error complains that the evidence was insufficient to support appellant's conviction, because the State failed to show that appellant appropriated by acquiring and otherwise exercising control over the property with the intent to deprive the owner of possession.

Appellant was charged with theft by appropriation under Tex.Penal Code Ann. § 31.01(5)(B) (Vernon 1989). The court submitted a charge on the law of parties. When appellant, pursuant to a preplanned scheme, took the items of clothing to the rack in the fitting room, and again when she handed them to the co-defendant, she exercised control over the clothing. When appellant gave the clothing to the co-defendant, allowing the co-defendant to stuff the clothing in her purse and leave the store without paying, appellant intended to deprive or permanently withhold the clothing from its owner for purposes of Tex.Penal Code Ann. § 31.01(3)(A) (Vernon 1989). *See Freeman v. State*, 707 S.W.2d 597, 606 (Tex.Crim.App.1986). We find that the evidence was clearly sufficient to support appellant's conviction, and overrule the first point of error.

We affirm the judgment of the trial court.