No. 73–1169. FLAHERTY ET AL. *v.* ARKANSAS. Sup. Ct. Ark. Certiorari denied.

MR. JUSTICE DOUGLAS, with whom MR. JUSTICE BRENNAN and MR. JUSTICE MARSHALL concur, dissenting.

Petitioners have been convicted of operating a gambling house, in violation of Ark. Stat. Ann. § 41–2001 (1964). 255 Ark. 187, 500 S. W. 2d 87. They challenge the introduction into evidence of tape recordings of telephone conversations which they claim were seized in violation of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U. S. C. § 2510 *et seq.*

A warrant was issued to search petitioner Flaherty's home. After being admitted to the home, state officers placed petitioners under arrest and without petitioners' consent monitored incoming phone calls placing bets for one hour. An officer attached a suction cup containing an induction coil to the telephone and, impersonating

petitioners,[1] recorded the calls being made to the telephone. It is undisputed that the search warrant did not authorize the search and seizure of such calls, and the petitioners did not consent to the seizure of the calls.[2] Petitioners argue that the police intent to record the calls without securing a search warrant is evidenced by the fact the police brought the induction coil and recording equipment with them when executing the warrant.

Petitioners claim that the seizures were made in violation of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, a detailed scheme created by Congress to allow the use of electronic surveillance by the States to intercept wire and oral communications only under stringently defined circumstances, clearly not met here.[3] Under

---

[1] Some callers asked to speak to petitioner Whipple and some asked to speak to petitioner Flaherty. The officer who monitored the phone admitted that on some occasions at least he "posed as" and was "impersonating" Flaherty. R. 235–236.

[2] Both the Arkansas Supreme Court and respondent note that when the officers appeared at Flaherty's home with the search warrant, petitioners "invited" them into the home. But there is no suggestion that petitioners, under arrest, consented to the warrantless interception of the telephone calls.

[3] Petitioners claim that the Fourth Amendment was violated when the police took over the phone and seized the incoming conversations without a warrant by impersonating petitioners. There is no dispute that the search warrant did not encompass the seizure of the incoming telephone calls, and the intention of the police to seize the calls when they entered the home is uncontested. There is, however, some question whether this argument was presented to the court below; respondent contends that "this exact argument" was not presented. In any event, the Fourth Amendment issue would necessarily be implicated in consideration of the Title III issue, properly raised by petitioners. See *infra*.

Indeed, Congress has ample power to provide protection for the privacy of telephonic communications more comprehensive than that provided by the Fourth and Fourteenth Amendments. This power reaches not only interstate but also intrastate telephonic communi-

Title III, there must be a judicial order to intercept conversations; the application for the order must have been authorized by the principal prosecuting attorney of the State or a political subdivision, 18 U. S. C. § 2516 (2); must contain carefully specified information, § 2518 (1); and the judge before issuing the order must make detailed findings of fact, § 2518 (3), and include certain information in the order, § 2518 (4).

The Arkansas Supreme Court suggested that the calls in this case were not "intercepted" within the meaning of the statute, since the police officer merely answered the telephone when it rang. The contention is without merit. Title III defines "intercept" broadly as the "aural acquisition of the contents of any wire or oral communication through the use of any electronic, mechanical, or other device." 18 U. S. C. § 2510 (4). The contents of the communications in this case were clearly acquired by use of electronic and mechanical devices—an induction coil was affixed to the telephone and the conversations thereby monitored were fed into a tape recorder.

That an "interception" can occur without overhearing a conversation being carried between two other persons is made clear by 18 U. S. C. § 2511 (2)(c). This section comprehends that a party to a communication can "intercept" it within the meaning of the statute; it provides, however, that such interception is not unlawful within the meaning of Title III:

> "It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire or oral communication, where such person is a party

---

cations. See *Weiss* v. *United States,* 308 U. S. 321, 327. And it enables Congress to require suppression of evidence in both federal and state proceedings. See *Nardone* v. *United States,* 302 U. S. 379; *Lee* v. *Florida,* 392 U. S. 378.

to the communication or one of the parties to the communication has given prior consent to such interception."[4]  18 U. S. C. § 2511 (2)(c).

In any event, the Arkansas Supreme Court did not rely on the "interception" concept in disposing of petitioners' claim; it placed express reliance on the "party" exception contained in § 2511 (2)(c), *supra*.  Noting that the section provides an exception to the ban on warrantless interceptions for a party to the communication, the court reasoned that the police officer, impersonating petitioners, was a party to the communications and thus could record them without a warrant.

We must, however, interpret § 2511 (2)(c) in light of existing constitutional standards.  See S. Rep. No. 1097, 90th Cong., 2d Sess., 66 (1968).  The party exception and the consent-of-a-party exception must have their justification in the decisions of this Court.  "Bugged informer" cases have permitted the introduction of transmitted or recorded evidence, seized without a warrant, where the transmission or recording has been with the consent of a party to an oral communication.  See, *e. g., Lopez* v. *United States,* 373 U. S. 427; *United States* v. *White,* 401 U. S. 745.  The Court has also permitted telephonic conversations to be overheard with the consent of a party to the conversation.  See *Rathbun* v. *United States,* 355 U. S. 107 (no "interception" within meaning of § 605 of Federal Communications Act of 1934 when party to conversation allowed police to listen on extension telephone).

---

[4] *United States* v. *Pasha,* 332 F. 2d 193, and *Rathbun* v. *United States,* 355 U. S. 107, involved "interceptions" under § 605 of the Federal Communications Act of 1934, which did not have the broad express definition contained in Title III. *State* v. *Vizzini,* 115 N. J. Super. 97, 278 A. 2d 235, also relied on by the Arkansas court, mistakenly interpreted Title III in light of § 605 precedent.

But these cases do not reach the instant case. The principle underlying them is that when one reveals information to an individual, one takes the risk that one's confidence in that individual might be misplaced.[5] The individual might be a government informer or agent, or might later reveal one's confidences to others. When he talks, it is only the trust placed in him that is breached. But here the callers were deceived as to the identities of the individuals with whom they were speaking. Trust was not misplaced in petitioner Flaherty, who then revealed information or allowed the police to listen in; trust was misplaced in the assumption that an individual identifying himself as Flaherty was in fact the person known to the callers as Flaherty.

Allowing the government to practice deception in this case carries the seeds of destroying a substantial part of the congressional plan in Title III and its constitutional underpinnings. By impersonation, the police could engage in conversations with unsuspecting callers, becoming technical "parties" to the conversations. In the instant case, a standard warrant to search a home for physical evidence was transmuted into the power to search and seize all incoming calls without any of the protections inherent in Title III's requirements. But the principle would seemingly extend beyond this situation, even to the situation where the police intercepted calls before they reached a recipient's telephone and mimicked the intended recipient's voice, inducing a conversation to which the police were "parties." It is unthinkable that a carefully drawn legislative plan can

---

[5] See *United States* v. *White*, 401 U. S. 745, 752; *Lopez* v. *United States*, 373 U. S. 427, 438; *Rathbun* v. *United States, supra,* at 111. The risk is assumed when one speaks to a trusted acquaintance, cf. *Hoffa* v. *United States*, 385 U. S. 293, 302, and perhaps even more clearly when one knowingly and willingly confides in a stranger, cf. *Lewis* v. *United States*, 385 U. S. 206, 210.

consistently with constitutional principles be frustrated in a manner leaving no legal protection for the privacy and security of telephone conversations as long as callers can be successfully deceived. We have not yet reached the point where the people must use secret passwords to establish their identities when communicating by telephone.

I would grant certiorari and reverse the judgment below.